## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **KELLI D. JONES, SHALA J. PEREZ-TRUMBO,** | ) | |
| **and CYNTHIA MARTINEZ,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 06-2131-KHV** |
| **WICHITA STATE UNIVERSITY and PAUL** | ) | |
| **DOTSON, individually and in his official capacity** | ) | |
| **as Chief of the Wichita State University Police** | ) | |
| **Department,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Kelli D. Jones brings employment claims against Wichita State University ("WSU") and Paul Dotson, Chief of the WSU Police Department. Specifically, plaintiff claims that WSU committed sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., (Counts I and II) and intentionally inflicted emotional distress in violation of Kansas common law (Count V). Plaintiff alleges that Dotson denied her equal protection under the Fourteenth Amendment in violation of 42 U.S.C. § 1983 (Count IV).[1] This matter is before the Court on defendants' Motion For Summary Judgment On Claims Of Kelli D. Jones (Doc. #105) filed September 7, 2007. For reasons set forth below, the Court finds that defendants' motion should be sustained.

_____

[1] On March 28, 2007, the Court sustained defendants' motion to dismiss plaintiff's claims against Dotson for sexual harassment, retaliation, intentional infliction of emotional distress and negligent supervision (Counts I, II, V and VI). The Court also sustained defendants' motion to dismiss plaintiff's claims that WSU violated Section 1983 (Count III) and engaged in negligent supervision (Count VI). Memorandum And Order (Doc. #69).

**Legal Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving parties are entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence.  Id. at 252.

The moving parties bear the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991).  Once the moving parties meet their burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which [she] carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  The nonmoving party may not rest on her pleadings but must set forth specific facts.  Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment.  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative.  Anderson, 477 U.S. at 250-51.  "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on

suspicion, and may not escape summary judgment in the mere hope that something will turn up at

trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is "whether

the evidence presents a sufficient disagreement to require submission to the jury or whether it is so

one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

### Facts

The following facts are uncontroverted.

Kelli D. Jones worked for the WSU police department as a student cadet and student

dispatcher and assistant from 1998 through the end of 2002.  She returned to work as a safety and

security officer from December of 2003 until February 10, 2006.  Her duties included patrolling the

campus and assisting students, faculty and others on campus.  Larry Keller was her immediate

supervisor.  Keller reported to Captain John Davis, who reported to Dotson.

Jones received outstanding performance reviews throughout her tenure and believes that her

performance throughout 2005 was outstanding.

In May of 2002, Jones attended mandatory sexual harassment training.  In January of 2005,

Jones was aware of avenues to report sexual harassment.  Jones also attended harassment and ethics

training in June of 2005.

Some time in mid-January of 2005, Jones discussed a new fitness program with Captain

Bruce Johnson and a female coworker, Joni Butler.  Jones commented that she did not like to run

because it hurt her back.  Johnson said, "Let's face it, you're not an A-cup."[2]  Jones Depo., attached

as Ex. A to Defendant's Memorandum Supporting Summary Judgment On Claims Of Kelli D. Jones

---

[2]        Jones responded to Johnson's comment by clarifying that she was talking about her
lower back.

-3-

("Defendant's Memorandum") (Doc. #106) filed September 7, 2007 at 45.  On February 14, 2005, Jones reported this comment to Keller, her immediate supervisor.

On January 31, 2005, Jones and Johnson interviewed students for cadet positions.  After the morning interviews, Johnson suggested that they go to lunch and Jones agreed.  During lunch, Johnson asked about Jones' ex-boyfriend who had recently been incarcerated.  Johnson mentioned that he had met the woman who was seeing Jones' ex-boyfriend and that he was not impressed with her.  Johnson paid for Jones' lunch, which she felt was inappropriate, but she was not offended by his comments.  When they returned to the station, Johnson told Jones that she had clearer skin than the woman who was seeing the ex-boyfriend.  Jones said that it was amazing what makeup could do.  Johnson then asked her, "have you ever done anything you know was wrong, but you did it anyway?"  Ex. 8, attached to Jones Depo. (Doc. #106-3) at 2.  Jones responded that she was sure everyone makes mistakes like that.  Johnson then leaned forward and said, "On top of everything else, you have lips I could kiss for hours."  Id. at 2-3.  He learned back in his chair and told Jones about a woman who finally gave a suitor a chance, and they ended up married.  Johnson told Jones that the point of the story was that someone worth her time would find her and make her happy.  Johnson made these comments over the course of ten to 15 minutes.  Jones felt embarrassed, sick and nervous after Johnson's comments.  Later that day, Johnson told Keller that he had made a comment about Jones' lips and that she may have taken it the "wrong way."  Johnson told Keller that he was only trying to boost Jones' self-esteem with the comment.

On February 14, 2005, Jones told Keller about Johnson's comments on January 31.  Jones referred to them as "creepy."  Keller told Jones that she could complain to upper management or Human Resources, or that he could just talk to Johnson and the conduct would stop.  Jones believed

-4-

that Keller wanted her to have him talk with Johnson.  Jones told Keller that she only wanted the conduct stopped, and in fact, after February 14, 2005, Johnson never made inappropriate sexual comments to her.

On June 15, 2005, all full-time police staff (including Jones, Johnson and Keller) attended a training session on WSU sexual harassment policy.  During the training, Jones told Keller that "inappropriate things" were going on at WSU.  After the training, Keller asked Jones if she was going to complain to Human Resources and she said that she probably would.

On June 21, 2005, three female police department employees – Jones, Cynthia Martinez and Erin Plett – gave Rhonda Cantrell, Associate Director of Employee Relations and Training, written complaints about the conduct of male co-workers.[3]  Jones' complaint set forth the comments which Johnson made to her on January 31, 2005, as noted above.  See Ex. 8, attached to Jones Depo. (Doc. #106-3) at 1-3.  After recounting the conversation of January 31, Jones stated that she had been upset for the next two weeks and that she reported the incident to Keller on February 14, 2005.  Jones stated that a few days later, Keller told her that he had talked to Johnson, that Johnson was "scared shitless," and that Johnson had said that he made the comments to boost Jones' ego.  Id. at 4.  Jones wrote that these statements angered her.  When Keller told Jones that Johnson wanted to offer her an apology, Jones said "absolutely not."  Id.  Jones stated that since January, she had avoided Johnson "at all costs" and that Johnson did not speak to her unless necessary.  She also

---

[3]    Plett wrote that Johnson had made comments to her that "she would look good in blue" when she took a position with a law enforcement agency that wore blue uniforms.  Martinez complained that her supervisor, Sergeant Gary Bequette, had followed her, invaded her personal space and touched her hand when she handed him things.  They also gave Cantrell a signed document from another co-worker, Susie Ashbridge.  Ashbridge complained that Johnson acted differently when the Chief was around.

stated that other female employees had told her that Johnson had made "inappropriate" (although "less shocking") comments to them.  Id.  In her written complaint, Jones did not include details of those comments.

On June 21, 2005, Cantrell interviewed Jones, Plett and Martinez.  She also contacted Dotson, Ted Ayres, WSU Equal Employment Opportunity Director, and Mike Turner, Director of Human Resources, to tell them about the complaints.  During the next several days, Cantrell and Dotson interviewed numerous witnesses, including Johnson, Keller, Ashbridge and others.

Johnson acknowledged the comments to Jones but said that he was only trying to make Jones feel better about herself and boost her self-esteem.  He denied making a "pass" but agreed that he should not have made the comments.

Other witnesses told Dotson and Cantrell that when Dotson was present, Johnson would scold employees for making certain remarks, but that Johnson would make the same sort of remarks when Dotson was absent.  Dotson concluded that Johnson had betrayed his trust with his comments to Jones and altering his behavior around Dotson to falsely suggest that he supported Dotson's efforts to change attitudes within the police department.

On June 28, 2005, Turner met with Johnson and told him that the investigation revealed concerns over Johnson's behavior toward women in the workplace.  Turner told Johnson that he would likely face demotion or discharge.  Johnson asked if he might be able to retire instead, and Turner told him that retirement might be an option.

On July 5, 2005, Johnson gave Dotson a letter which stated that he intended to retire.  On July 6, 2005, Dotson accepted the letter as a resignation.  Johnson continued to work, however, until late July.  Jones understands that Johnson resigned rather than face discipline as a result of the

investigation of concerns raised by her and others.

After she reported Johnson's conduct, plaintiff received the cold shoulder from some co-workers.[4]  Jones Depo., attached as Ex. A to Defendant's Memorandum (Doc. #106) at 86-87. Specifically, Valerie Pittier, Heather Ballard, Chris Mai, Lloyd Harp and Jeff Rider stopped talking when she entered the room.  Butler told Jones that she should have handled the situation with Johnson in a different way.  Jones decided to talk to Johnson so that co-workers would stop giving her the cold shoulder.  Jones told Johnson that she had not wanted him to lose his job for inappropriate comments but had wanted him removed from her chain of command.

Dotson attended both sessions of the sexual harassment training held in June of 2005, and encouraged attendees to report sexual harassment.  Dotson never made any comments to Jones that would dissuade her from filing a sexual harassment complaint.  After Jones made the allegations against Johnson, Dotson told her that he knew it was hard to make such a report and that he was glad that she did.  Jones is aware that Dotson began to investigate her complaints the day after she made them.  Jones does not believe that Dotson's approach was too slow, and she knows that Dotson interviewed many people about her concerns.

Jones believes that Dotson violated her constitutional rights because Johnson remained employed at WSU for about one month after he admitted his inappropriate remarks to Dotson. Dotson does not have any authority to suspend, demote or discharge state employees, but he can recommend discipline to the Human Resources Department.  After Dotson accepted Johnson's

---

[4]     Some of Johnson's co-workers invited him to lunch to recognize his retirement. Dotson did not participate in planning the lunch and did not attend it.  WSU did not sponsor or fund the lunch.  Dotson believed that Johnson had brought discredit to the department through his actions and did not deserve any festivities.

resignation, he told Johnson to stay away from Jones and spend his time in his office until his last day of work.

On January 20, 2006, Jones attempted to file a charge of discrimination with the Kansas Human Rights Commission ("KHRC") alleging sexual harassment on January 31, 2005.  The KHRC informed Jones that it could not accept the charge because the claimed conduct had occurred more than six months before her attempt to file.  Jones then attempted to file the same charge of sexual harassment with the Equal Employment Opportunity Commission ("EEOC").  The EEOC refused the charge because the last incident of alleged harassment had occurred more than 300 days before the attempted filing.

On February 10, 2006, Jones resigned her position at WSU.  On February 21, 2006, Jones filed with the EEOC a revised charge for sexual harassment and constructive discharge.  The EEOC accepted the charge and issued a finding of no probable cause on February 28, 2006.  The narrative portion of Jones' charge stated as follows:

> I believe that I was sexually harassed due to my sex, female. I believe that I was racially harassed due to my race, a White who had associated with a Black. I allege that the above violates Title VII of the Civil Rights Act. I was  constructively discharged due to my sex, race, and in retaliation for my complaints of discrimination.

Ex. 9, attached to Jones Depo. (Doc. #106-3) at EEOC 008.  Jones attached a "Complaint Request" to her EEOC charge.  It further described her claims as follows:

> [I] have been employed at the WSU University Police Department (WSUPD) from December 2003 to present. I currently hold the position of Safety and Security Officer II. Throughout January 2005, Wichita State employee Bruce Johnson, a Police Captain in my chain of command, subjected me to unwelcome sexual advances, verbal harassment, and racist verbal comments. On June 21, 2005, I filed an official complaint with the Wichita State University Department of Human Resources.  Although Captain Johnson did NOT deny my allegations, freely admitted to my direct supervisor, Larry Keller, that he did in fact commit the acts

that I complained about, and knew that his comments and actions were unwelcome; WSU began an investigation which was never completed and failed to take swift and appropriate corrective action as required by law. Further, WSU notified me on August 2005 that they were unable to make a determination regarding my sexual harassment complaints, and provided no response to date, as to my allegations of verbal racist remarks made on June 9, 2005.

Id. at EEOC 09.

On April 8, 2006, Jones and Perez-Trumbo filed this lawsuit.[5]   They alleged sexual harassment and retaliation in violation of Title VII, violation of constitutional rights pursuant to 42 U.S.C. § 1983, negligence and intentional infliction of emotional distress. On March 28, 2007, the Court sustained defendants' motion to dismiss plaintiffs' claims against Dotson for sexual harassment, retaliation, intentional infliction of emotional distress and negligent supervision (Counts I, II, V and VI). Memorandum And Order (Doc. #69) at 8. The Court sustained defendants' motion to dismiss plaintiffs' claims against WSU for violation of Section 1983 (Count III) and negligent supervision (Count VI). Id. Plaintiff's remaining claims are for sexual harassment and retaliation in violation of Title VII (Counts I and II against WSU), intentional infliction of emotional distress under Kansas common law (Count V against WSU) and denial of equal protection under Section 1983 (Count IV against Dotson).

WSU and Dotson seek summary judgment on all counts.

**Analysis**

WSU asserts that it is entitled to summary judgment on plaintiffs' Title VII claims because (1) plaintiff did not timely exhaust administrative remedies; (2) Johnson's alleged harassment was

---

[5]         On August 11, 2006, Cynthia Martinez joined this lawsuit. In this lawsuit, Jones does not allege race discrimination or constructive discharge. See Pretrial Order (Doc. #97) filed August 2, 2007 at 2.

not sufficiently severe or pervasive to constitute a hostile working environment; (3) WSU has conclusively established the affirmative defense outlined in Faragher v. City of Boca Raton, 524 U.S. 775 (1998); and (4) plaintiff cannot show adverse employment action. WSU claims that it is entitled to summary judgment on plaintiff's outrage claim because (1) it is entitled to Eleventh Amendment immunity and (2) plaintiff cannot show outrageous conduct. Dotson asserts that he is entitled to summary judgment because plaintiff cannot establish that he deprived her of a constitutional right and he is therefore entitled to qualified immunity.

As a preliminary matter, plaintiff begins the analysis section of her brief by stating that other female employees (including her co-plaintiffs) complained of sexual harassment, and that such evidence "establishes a pattern of retaliatory behavior or tends to discredit the employer's assertion of legitimate motive." Plaintiff Kelli D. Jones['] Response To Defendant[s'] Motion For Summary Judgment ("Plaintiff's Response") (Doc. #117) filed October 29, 2007 at 9 (quoting Mendelsohn v. Sprint/United Mgmt. Co., 466 F.3d 1223, 1226-27 (10th Cir. 2006), cert. granted, 127 S.Ct. 2937 (June 11, 2007)). Plaintiff cites no evidence that other female employees complained of sexual harassment by Johnson, however, and the complaints by plaintiff's co-workers do not actually show that it was "far more likely than not that the harassment took place, and that the University made it a habit not to discipline the perpetrators." Plaintiff's Response (Doc. #117) at 10.

In the sexual harassment context, a plaintiff may introduce evidence of treatment of others if that evidence shows that the conduct created a hostile environment for *plaintiff*. Alwine v. Buzas, No. 02-4185, 2004 WL 363477, at *7 (10th Cir. Feb. 27, 2004) (harassment of co-workers one year after plaintiff's experiences not relevant because plaintiff could not have been aware of such harassment when she alleged she was subject to hostile work environment). Moreover, the

-10-

undisputed facts include no evidence that Johnson sexually harassed any co-worker, or that anyone else engaged in sexual harassment of plaintiff.

In support of her argument that other female employees experienced sexual harassment, Jones generally cites the "affidavit of Glorimar Calderon." She does not include Calderon's affidavit as an exhibit to her response. On November 19, 2007, more than two weeks after she filed her response, Jones filed Calderon's affidavit as an untimely exhibit to her response. See Doc. #122. Jones did not file a motion for leave to file the late affidavit, and she offers no excuse for the late filing. Rule 6(d), Fed. R. Civ. P., provides that "when a motion is supported by affidavit, the affidavit shall be served with the motion." Further, D. Kan. Rule 6.1(a) provides in part that "[e]xtensions will not be granted unless the motion is made before the expiration of the specified time, except upon a showing of excusable neglect." To determine whether the movant has demonstrated excusable neglect, the court considers all relevant circumstances surrounding the party's omission including: (1) the danger of prejudice; (2) the reasons for the delay including whether it was within the reasonable control of the movant; (3) the length of delay and its potential impact on judicial proceedings; and (4) whether the party acted in good faith. ICE Corp. v. Hamilton Sundstrand Corp., No. 05-4135, 2007 WL 1732369, at *1 (D. Kan. June 11, 2007) (citing Bishop v. Corsentino, 371 F.3d 1203, 1206-07 (10th Cir. 2004)) (whether movant has demonstrated excusable neglect rests upon principles of equity). Here, Jones offers no explanation for the delay or suggested any basis for the Court to determine that she acted in good faith. Therefore the Calderon affidavit is not properly before the Court.

**I.      Sexual Harassment Claim Against WSU (Count I)**

Plaintiff alleges that over a two-week period, Johnson sexually harassed her by (1) stating

"Let's face it, you're not an A-cup" in mid-January; and (2) on January 31, 2005, commenting on her clear skin, asking her, "have you ever done anything you know was wrong, but you did it anyway?" then leaning forward and saying, "On top of everything else, you have lips I could kiss for hours."  WSU asserts that it is entitled to summary judgment on this claim because (1) plaintiff did not timely exhaust administrative remedies; (2) the alleged harassment was not sufficiently severe or pervasive to constitute a hostile working environment; and (3) WSU has conclusively established its Faragher defense.

WSU asserts that plaintiff did not timely file an EEOC charge on her harassment claim. Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII.  See Simms v. Oklahoma, 165 F.3d 1321, 1326 (10th Cir. 1999).  To exhaust administrative remedies, a plaintiff generally must present her claim to the EEOC or authorized state agency (in Kansas, the KHRC) and receive a right-to-sue letter based on that charge.  Id. at 1326.  The charge "shall be in writing and signed and shall be verified," 29 C.F.R. § 1601.9, and must at a minimum identify the parties and "describe generally the action or practices complained of," 29 C.F.R. § 1601.12(b).  The charge tells the EEOC or KHRC what to investigate, provides the opportunity to conciliate the claim and gives the charged party notice of the alleged violation.  See Martinez v. Potter, 347 F.3d 1208, 1211 (10th Cir. 2003).  The requirement to present claims in a charge to the EEOC or a state agency serves the dual purposes of ensuring that the administrative agency has the opportunity to investigate and conciliate the claims and providing notice of the claims to the charged party.  See id.; Baker v. Via Christi Reg'l Med. Ctr., 491 F. Supp.2d 1040, 1049 (D. Kan. 2007).  Filing an untimely charge does not deprive the Court of jurisdiction.  See Zipes v. Trans World Airlines, 455 U.S. 385, 393 (1982).  The timeliness requirement is like a statute of limitations, i.e. subject to

-12-

waiver, estoppel and equitable tolling.  <u>Id.</u>

In Kansas, plaintiff must file an EEOC charge within 300 days of the alleged discriminatory action.  <u>See</u> 42 U.S.C. § 2000e-5(e)(1).  Plaintiff alleges that all of the sexual harassment took place during January of 2005.  Plaintiff filed her EEOC charge on February 21, 2006, more than 300 days later.  WSU correctly asserts that plaintiff's charge of sexual harassment was untimely.  Plaintiff does not allege that the time limit should be tolled.  The Court therefore finds that plaintiff's sexual harassment claim is time-barred.[6]  WSU is therefore entitled to summary judgment on plaintiff's sexual harassment claim.

**II.      Retaliation Claim Against WSU (Count II)**

In the pretrial order, plaintiff asserts that WSU retaliated against her for engaging in protected activity.  Specifically, plaintiff alleges that after she complained to Human Resources about Johnson's conduct, co-workers (1) gave her the cold shoulder and (2) pressured her to express sorrow for Johnson.  <u>See</u> <u>Pretrial Order</u> (Doc. #97) at 7.  WSU asserts that it is entitled to summary judgment on this claim because plaintiff (1) did not exhaust administrative remedies and (2) cannot show materially adverse employment action.

A.      <u>Exhaustion Of Administrative Remedies</u>

WSU asserts that plaintiff did not include co-worker retaliation in her EEOC charge.  On the EEOC charge, Jones marked the boxes for sex discrimination and race discrimination but not

---

[6]      Even if plaintiff's sexual harassment claim were not barred, the Court would find – for substantially the reasons set forth in defendants' opening brief – that the alleged harassment was not sufficiently severe or pervasive to constitute a hostile working environment.  <u>See</u> <u>Defendant's Memorandum</u> (Doc. #106) at 20-23.  For this reason, the Court does not address the <u>Faragher</u> defense.

-13-

retaliation.[7]  Although failure to mark the box for a particular allegation of discrimination is not dispositive, it creates a presumption that plaintiff did not assert claims represented by boxes not checked.  Gunnell v. Utah Valley State Colls. 152 F.3d 1253, 1260 (10th Cir. 1998).  Plaintiff argues that the presumption is rebutted by the text of her charge, which states that "I was constructively discharged due to my sex, race, and in retaliation for my complaints of discrimination." Ex. 9, attached to Jones Depo. (Doc. #106-3) at EEOC 008.  Plaintiff asserts that co-worker retaliation is reasonably related to her claim that defendant constructively discharged her in retaliation for complaints of discrimination.  Consideration of acts not expressly included in an administrative charge is appropriate where the alleged conduct would fall within the scope of an EEOC investigation which would reasonably be expected to follow the charge of discrimination actually made.  Jones v. United Parcel Serv., 502 F.3d 1176, 1186 (10th Cir. 2007).  Arguably, an investigation of plaintiff's claims of constructive discharge in retaliation for complaints of discrimination would reasonably have led to claims that co-workers retaliated for complaints of discrimination.  Plaintiff's EEOC charge contains sufficient allegations to support a Title VII retaliation claim that co-workers gave plaintiff the cold shoulder in retaliation for complaints of discrimination.  WSU is not entitled to summary judgment on this issue.

B.    Adverse Employment Action

Title VII makes it unlawful for an employer "to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a).  Absent direct evidence of retaliation, the Court assesses claims under the McDonnell Douglas burden-shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792,

---

[7]        Plaintiff does not claim race discrimination in this lawsuit.

802-04 (1973); Medina v. Income Support Div., 413 F.3d 1131, 1135 (10th Cir. 2005).  Under this

burden-shifting structure, plaintiff must first establish a prima facie case of retaliation.  If she does

so, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the

adverse employment decision.  From there, the burden returns to plaintiff to show that the stated

reason is pretextual.  Id.

    To establish a prima facie case of retaliation, plaintiff must demonstrate (1) that she engaged

in protected opposition to discrimination; (2) that a reasonable employee would have found the

challenged action materially adverse; and (3) a causal connection between the protected activity and

the materially adverse action.  See Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193,

1202 (10th Cir. 2006) (citing Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2414-15

(2006)).[8]  WSU argues that plaintiff cannot establish the second element – that a reasonable

employee would consider the actions of her co-workers to be materially adverse.

    For purposes of a Title VII retaliation claim, an action is materially adverse if it "well might

have dissuaded a reasonable worker from making or supporting a charge of discrimination."

Burlington N., 126 S. Ct. at 2415 (further quotation omitted).  In applying the Burlington Northern

standard to retaliatory co-worker harassment, the Tenth Circuit has cited the well-established

requirement that the behavior complained of must render the workplace "permeated with

discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the

---

    [8]    Because harassment must be intentional on the part of the employer, an employer can
only be liable for co-worker retaliation where supervisory or management personnel either
(1) orchestrate the harassment or (2) know about the harassment and condone and encourage it.
Hamby v. Associated Ctrs. For Therapy, No. 06-5043, 2007 WL 458011, at *8 (10th Cir. Feb. 13,
2007). WSU does not address this issue.

conditions of the victim's employment and create an abusive working environment."[9] McGowan v. City of Eufala 472 F.3d 736, 743 (10th Cir. 2006) (allegations that co-workers highlighted plaintiff's time slips and criticized her work are of trivial nature and do not rise to claim of abusive materially adverse work environment) (citing Harris v. Forklift Sys., 510 U.S. 17, 21 (1993), abrogated on other grounds, Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753 (1998))).  WSU asserts that as a matter of law, the cold shoulder treatment which plaintiff alleges is not materially adverse.  The Court agrees.  See Martin v. Merck & Co., 446 F. Supp.2d 615, 639 (W.D. Va. 2006) (while being avoided and ignored by fellow employees is undoubtedly uncomfortable, it is within category of "petty slights and minor annoyances" and not materially adverse job action); see also Herrera v. Midwest Med. Transp. Co., No. 06CV5016, 2007 WL 1725270, at *7 (D. Neb. June 12, 2007) (loss of ride-sharing with co-worker not adverse consequence that would dissuade reasonable employee from bringing complaint of discrimination or harassment).  Plaintiff's response cites no authority that her alleged retaliatory treatment by co-workers was materially adverse.  Rather, plaintiff argues that "there is little dispute that defendant took adverse action in that it failed to

---

[9]    Since Burlington Northern, the Tenth Circuit has stated that to show a retaliatory hostile work environment, plaintiff must show that the incidents complained of must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  McGowan, 472 F.3d at 743.  The Tenth Circuit, however, also acknowledged that Burlington Northern requires only a "materially adverse action."  Under Burlington Northern, plaintiffs can survive summary judgment by showing that defendant subjected them to conduct which, although objectionable enough that it "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination,' did not meet the 'severe or pervasive' threshold ordinarily required in hostile work environment claims."  Khan v. HIP Centralized Lab. Servs., Inc., No. CV-03-2411, 2007 WL 1011325, at *10 (E.D.N.Y. Mar. 30, 2007) (lower standard for retaliatory hostile work environment claims may be appropriate).  The distinction is immaterial in this case because (1) plaintiff does not argue that the more lenient standard should apply and (2)) in any event, plaintiff has not demonstrated a genuine issue of material fact which would entitle her to proceed to trial under either standard.

remove plaintiff from the severe and pervasive situation that she was in from shortly after June 21, 2005 until Johnson left the department in late July 2005." Plaintiff's Response (Doc. #117) at 16. To the extent that plaintiff claims that the conduct of co-workers was "severe and pervasive," she cites no evidence to support her claim.[10] The Court finds that WSU is entitled to summary judgment on plaintiff's retaliation claim.

### III.    Claim For Intentional Infliction Of Emotional Distress Against WSU (Count V)

Plaintiff asserts a state law claim against WSU for intentional infliction of emotional distress. WSU contends that it is entitled to summary judgment because it is immune from liability on state law claims and that in the alternative, Jones cannot show outrageous conduct or severe distress.

#### A.    Eleventh Amendment Immunity

WSU points out that the Court has dismissed plaintiff's negligence claim, holding that as an agency of the State of Kansas, it is immune under the Eleventh Amendment from claims based on state common law. See Memorandum And Order (Doc. #69) filed March 28, 2007 at 4-5 (dismissing Section 1983 and state law negligence claims against WSU and Dotson in official capacity based upon Eleventh Amendment immunity). WSU argues that for the reasons set forth in the Court's prior Memorandum And Order, it is immune from Jones' claim of intentional infliction of emotional distress under Kansas common law. See, e.g., Garcia v. Lemaster, 439 F.3d

---

[10]    Plaintiff appears to suggest that in allowing Johnson to remain in the department from June 21, 2005 to late July of 2005, WSU committed adverse employment action against her. See Plaintiff's Response (Doc. #117) at 16-17. The pretrial order, however, does not allege such a claim. The pretrial order "supercedes the pleadings and controls the subsequent course of litigation." A.J. Plastic Prods., Inc. v. Sandretto USA, Inc., Case No. 04-2267, 2006 WL 618149, at *5 (D. Kan. Mar. 10, 2006) (claim asserted in complaint but not reasserted in pretrial order deemed abandoned); Wilson v. Muckala, 303 F.3d 1207, 1215-16 (10th Cir. 2002).

1215, 1219 n.7 (10th Cir. 2006) (Eleventh Amendment provides absolute federal court immunity to state officials from suits alleging breach of contract under state law).  Plaintiff does not address defendant's argument that it is entitled to Eleventh Amendment immunity.  Because plaintiff has conceded the point, and based on the analysis set forth in the prior <u>Memorandum And Order</u> (Doc. #69), the Court finds that WSU is immune from liability on Jones' state law claim for intentional infliction of emotional distress.[11]

**IV.     Section 1983 Claim (Count IV) Against Dotson**

Plaintiff alleges that Dotson denied her rights guaranteed by the Constitution, in violation of Section 1983 (Count IV).  <u>See</u> <u>Pretrial Order</u> at 30.  As a preliminary matter, Dotson points out that the pretrial order does not specify any constitutional right which he allegedly violated.  Plaintiff appears to assert that Dotson should have located Johnson to a job outside the police department between the date of her complaint (June 21, 2005) and Johnson's last day of work (July 29, 2005).  A supervisor's complete inaction in the face of known sexual harassment violates the equal protection clause.  <u>See</u> <u>Johnson v. Martin</u>, 195 F.3d 1208, 1219-1220 (10th Cir. 1999).  The Court therefore construes plaintiff's Section 1983 claim as asserting that Dotson violated her right to equal protection under the Fourteenth Amendment.

Dotson asserts that he is entitled to qualified immunity on plaintiff's Section 1983 claim because Jones did not suffer a constitutional injury.  The doctrine of qualified immunity protects

---

[11]     If the Court had jurisdiction over the outrage claim, it would hold as a matter of law that the alleged conduct does not rise to the level of intentional, extreme or outrageous conduct and that plaintiff did not suffer extreme and severe emotional distress.  <u>See</u> <u>McGregor v. City of Olathe, Kan.</u>, 158 F. Supp.2d 1225, 1242 (D. Kan. 2001) (citing <u>Fusaro v. First Family Mortgage Corp.</u>, 257 Kan. 794, 805, 897 P.2d 123, 131 (1995) (to support tort of outrage, conduct must go beyond bounds of decency and "be regarded as atrocious and utterly intolerable in a civilized society")).

government officials from individual liability when they act within the scope of their employment. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity provides government officials immunity from suit as well as from liability for their discretionary acts.  Mitchell v. Forsyth, 472 U.S. 511, 526-27 (1985); Pueblo Neighborhood Health Cars., Inc. v. Losavio, 847 F.2d 642, 644 (10th Cir. 1988).

The Supreme Court has established a two-part approach to determine if qualified immunity applies.  "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." County of Sacramento v. Lewis, 523 U.S. 833, 842 n.5 (1998).

Dotson asserts that Jones cannot establish that he deprived her of a constitutional right, and that he is therefore entitled to qualified immunity.

A.    Deprivation Of Constitutional Right

The Tenth Circuit recognizes that sexual harassment under the color of state law violates the equal protection clause. See Woodward v. City of Worland, 977 F.2d 1392, 1399 (10th Cir. 1992). A supervisor's knowledge of sexual harassment and complete inaction in the face of an allegation may also constitute a constitutional violation. See Johnson, 195 F.3d at 1219-1220. Jones does not allege that Dotson engaged in sexual harassment, knowingly tolerated sexual harassment, or completely ignored and failed to investigate her complaints. Rather, as noted, she apparently asserts

that Dotson should have removed Johnson from the police department between June 21 and July 29, 2005. She cites no authority that Dotson's failure to do so violates any of her constitutional rights. She does not assert that Johnson engaged in inappropriate behavior during that period. In fact, plaintiff initiated her only contact with Johnson after July 5, to talk with him about his situation. Plaintiff acknowledges that Dotson was personally involved in immediately responding and investigating her complaint. Plaintiff cannot establish that Dotson deliberately ignored her allegations. As matter of law plaintiff cannot establish that Dotson violated her constitutional rights, and he is therefore entitled to qualified immunity on her claim. See Johnson, 195 F.3d at 1219-1220.

IT IS THEREFORE ORDERED that defendants' Motion For Summary Judgment On Claims Of Kelli D. Jones (Doc. #105) filed September 7, 2007 be and hereby is SUSTAINED.

Dated this 20th day of December, 2007 at Kansas City, Kansas.

s/Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge